**IN RE Chris ELLIOTT**

**NO. 03-16-00231-CV**

Court of Appeals of Texas,
Austin.

Filed: October 7, 2016

Jason M. Hopkins, Rachel Riley, Kendyl Hanks Darby, Jason S. Lewis, for Magne-Gas Corporation.

Shelly L. Skeen, James D. Blume, for John Doe I and Chris Elliott.

Before Chief Justice Rose, Justices Pemberton and Bourland

## OPINION

Cindy Olson Bourland, Justice

Relator Chris Elliott has filed a petition for writ of mandamus challenging the district court's March 11, 2016 order in a proceeding seeking a presuit deposition under Texas Rule of Civil Procedure 202. The order allows real party in interest, MagneGas Corporation, to take a Rule 202 presuit deposition of Elliott to investigate potential claims related to an article about MagneGas by an anonymous author, "The Pump Stopper." *See* Tex. R. Civ. P. 202.1(b). Elliott raises six issues, contending that the district court abused its discretion by ordering Elliott's Rule 202 deposition. Among his other complaints, Elliott asserts that the district court's order violates the Texas Citizens Participation Act because an interested party, John Doe 1, who admits to having made an anonymous communication about MagneGas and who Elliott asserts is "The Pump Stopper," filed a motion to dismiss that should have stayed all discovery. *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011 (Texas Citizens Participation Act) ("TCPA" or "Act"). Because we conclude that the TCPA mandates that "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss," *see id.* § 27.003(c), meaning that the district court should not

have ordered the Rule 202 deposition to occur before it addressed and ruled on Doe's TCPA motion to dismiss, we will conditionally grant the petition for writ of mandamus and direct the district court to vacate its March 11, 2016 order.

## BACKGROUND

"The Pump Stopper" published an article on a website called "Seeking Alpha" on December 21, 2015. The article reported negatively on MagneGas's financial prospects. In its Rule 202 petition filed on January 22, 2016, MagneGas, a Delaware corporation with its principal place of business in Florida, sought to depose Elliott, who it alleges is a resident of Travis County. *See* Tex. R. Civ. P. 202.2(b)(2) (establishing that petition must be filed where witness resides if no suit is yet anticipated).

MagneGas alleges in its Rule 202 petition that "Elliott is affiliated with the website PumpStopper.com" and that the domain name "PumpStopper.com" is registered to Elliott. MagneGas further alleges that:

> That website has created, published, and/or distributed false and misleading information about MagneGas. Specifically, the "PumpStopper" creates anonymous reports baselessly bashing reputable companies such as MagneGas in hopes of driving down the stock price of the targeted companies. On information and belief, the "PumpStopper" shorts the stock of the targeted companies in advance of releasing its reports, hoping to make money from the artificial price deflation caused by its reports.

> MagneGas seeks to investigate potential claims against the authors, publishers, and distributors of the false and misleading materials, and MagneGas has reason to believe that Mr. Elliott has

knowledge that will facilitate that investigation.

Although MagneGas's Rule 202 petition does not specifically refer to the December 21, 2015 article or to the statements within it that MagneGas alleges are false and misleading, at the hearing at which the district court addressed the Rule 202 petition, MagneGas's counsel stated that this article was the basis for MagneGas's investigation of its potential claims.

Rule 202 allows a person to petition a trial court for an order authorizing the taking of a deposition to investigate a potential claim or suit, *see id.* R. 202.1(b), and it requires the petitioner to serve the petition and a notice of the hearing on the petition in accordance with Rule 21a at least 15 days in advance of the hearing on all persons the petitioner seeks to depose, *see id.* R. 202.3(a); *id.* R. 21a (establishing service requirements). Instead of setting a hearing and serving Elliott with the petition and notice of hearing, MagneGas first served Elliott with a subpoena for a deposition without obtaining an order authorizing Elliott's deposition based on MagneGas's Rule 202 petition. After Elliott refused through counsel to attend the deposition, MagneGas filed a motion to compel his compliance with the subpoena and set it for a fifteen-minute hearing on March 11, 2016.

Elliott filed a response to MagneGas's motion to compel, objections to the motion to compel and to the Rule 202 petition, a motion to quash the motion to compel, and a motion for protective order. Elliott set the motion to quash and the motion for protective order for an hour-and-a-half-long hearing on April 28, 2016. On March 10, John Doe 1, who identifies himself as "an author, publisher, and/or distributor who utilizes PumpStopper.com," filed a TCPA motion to dismiss both MagneGas's Rule 202 petition and its motion to compel

Elliott's deposition. *See* Tex. Civ. Prac. & Rem. Code § 27.003. In his TCPA motion to dismiss, Doe asserts that MagneGas's Rule 202 petition and motion to compel "both are based on, related to, or in response to John Doe 1's exercise of his right of free speech and the rights of free speech of other potential defendants and adverse parties." Doe also filed a notice of joinder in Elliott's motion to quash and motion for protective order. Doe set his motion to dismiss and motions to quash and for protective order for hearing on April 28 at the same time that Elliott's motions were set.

The day after Doe filed his TCPA motion to dismiss, the district court held a short, non-evidentiary hearing on Magne-Gas's motion to compel. The district court considered MagneGas's Rule 202 petition at the hearing after MagneGas acknowledged it had not yet been given permission to depose Elliott under Rule 202. Elliott's counsel informed the district court of the pending motions to quash and for protective order, as well as Doe's pending TCPA motion to dismiss, and asked the court to wait and consider the merits and all the issues at once during the April 28 hearing, which would be a longer evidentiary hearing. After considering the parties' arguments only on the Rule 202 petition, the district court granted MagneGas's Rule 202 petition and ordered Elliott's deposition "relating only to the attached [December 21, 2015] article by Pumpstopper" to occur on a mutually agreeable date within 30 days.

On April 1, MagneGas filed a motion to compel Elliott's compliance with the Court's March 11 order on its Rule 202 petition and set the motion to compel for

hearing on April 8. On April 6, Elliott filed his petition for writ of mandamus with this Court and an emergency motion for temporary relief. This Court granted the emergency motion on April 7, staying all proceedings pending further order of this Court.

## ANALYSIS

Elliott challenges the district court's order on MagneGas's Rule 202 petition, raising six issues, five that relate to the Rule 202 petition and one that asserts the order violates the TCPA's discovery stay. We turn to the issue of the TCPA discovery stay because it is dispositive of Elliott's petition for mandamus.

### Standard of review

 We review the district court's order granting the Rule 202 petition for presuit discovery for an abuse of discretion. *In re Hewlett Packard*, 212 S.W.3d 356, 360 (Tex. App.–Austin 2006, orig. proceeding [mand. denied]). To obtain the extraordinary remedy of mandamus relief, a relator must show both that the trial court clearly abused its discretion and that the relator has no adequate appellate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

 An improper order under Rule 202 may be set aside by mandamus. *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (orig. proceeding) (per curiam). When discovery is sought from a potential defendant in a contemplated lawsuit, Rule 202 orders have been considered ancillary to the possible subsequent suit and thus neither final nor appealable.[1] *In re Jorden*,

---

1. In contrast, Rule 202 orders granting discovery from third parties against whom suit is not anticipated are final and appealable because the Rule 202 petitioner does not seek or contemplate further relief from those third parties. *See In re Jorden*, 249 S.W.3d 416, 419 & n.7 (Tex. 2008) (orig. proceeding).

249 S.W.3d 416, 419 (Tex. 2008) (orig. proceeding); *In re Hewlett Packard,* 212 S.W.3d at 360 (holding mandamus was proper method for seeking review of Rule 202 order on petition to investigate claims against potential defendants); *see also IFS Sec. Grp. v. American Equity Ins. Co.,* 175 S.W.3d 560, 562–65 (Tex. App.–Dallas 2005, no pet.) (interpreting case law under prior civil-procedure rule allowing bill of discovery, which was predecessor to Rule 202.1(b) procedure allowing discovery to investigate potential claim). Here, although MagneGas's petition states that it is investigating a potential claim (as opposed to seeking to perpetuate testimony in an anticipated suit), the petition also states that MagneGas is investigating a potential claim *against the authors, publishers, and distributors of the allegedly false and misleading information.* Elliott is a potential defendant because MagneGas alleges that the Pumpstopper.com website is registered to him and that the website created, published, or distributed the allegedly false and misleading information. In addition, the petition states that MagneGas would benefit from the knowledge "that bringing a lawsuit against those individuals [affiliated with the Pumpstopper or Pumpstopper.com] is warranted." MagneGas acknowledges in its mandamus response that it seeks "to investigate claims *against the deponent.*" Therefore, the district court's Rule 202 order is neither final nor appealable, and if Elliott can show a clear abuse of discretion, mandamus relief is proper.

*See In re Wolfe,* 341 S.W.3d at 933; *In re Jorden,* 249 S.W.3d at 419–20.

■ An abuse of discretion occurs when the trial court's decision is so arbitrary and unreasonable that it amounts to clear and prejudicial error of law or if the trial court clearly fails to correctly analyze or apply the law. *Walker,* 827 S.W.2d at 839–40. A trial court has no discretion in determining what the law is or applying the law to the facts of the case, even if the law is somewhat unsettled. *In re Jorden,* 249 S.W.3d at 424.

### Statutory overview

■ Texas Rule of Civil Procedure 202.1(b) permits a person to petition a trial court for an order authorizing the taking of depositions before a suit is filed in order "to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(b). Rule 202 depositions are not intended for routine use. *In re Jorden,* 249 S.W.3d at 423. "Courts must strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule." *In re Wolfe,* 341 S.W.3d at 933. The trial court "must order a deposition to be taken if, but only if, it finds that . . . the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure." Tex. R. Civ. P. 202.4(a)(2).

Whether a motion to dismiss under the Texas Citizens Participation Act may be considered in a Rule 202 proceeding is an issue of first impression presented by this petition for writ of mandamus.[2] The pur-

---

**2.** The only other appellate court that has considered issues implicating both Rule 202 and the TCPA is our sister court in Dallas. *Watson v. Hardman,* No. 05–15–01355–CV, 497 S.W.3d 601, 2016 WL 3626091 (Tex. App.–Dallas, July 6, 2016, no pet.) (considering appeal from trial court's denial of TCPA motion to dismiss). In *Watson,* the TCPA motion to dismiss was filed in a separate lawsuit, not

in the Rule 202 proceeding. *Id.* at 603–05, at *1–2. The TCPA movant sought to dismiss the plaintiffs' defamation claims against him, asserting that their claims were based on his TCPA-protected right to petition because they were based in part on statements made by the movant in a Rule 202 petition. The court of appeals held that the TCPA movant carried his burden of showing that the nonmovants'

pose of the Act is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. The Act is to "be construed liberally to effectuate its purpose and intent fully," but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *Id.* § 27.011.

A key component of the TCPA is the provision of a mechanism for early dismissal of "legal actions" that are based on a party's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.003; *see also id.* § 27.001(2)-(4) (defining "exercise of the right of association," "exercise of the right of free speech," and "exercise of the right to petition"). Section 27.003 allows a litigant to seek dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a). A "legal action" is defined very broadly in the TCPA and means "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6).

The Act contemplates that the "court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech . . . ." *Id.* § 27.005(b). The Act then shifts the burden to the nonmovant, allowing the nonmovant to avoid dismissal of the legal action only by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The court may allow specified and limited discovery relevant to the motion on a showing of good cause, but otherwise "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss." *Id.* §§ 27.003(c), .006(b).

### Effect of Doe's TCPA motion on the Rule 202 proceeding

Elliott asserts that Doe timely filed his motion to dismiss under the TCPA and that the filing of his motion stayed all discovery in the Rule 202 proceeding. MagneGas responds that Doe waived his motion by failing to timely set it for hearing and by failing to prosecute it and that the Act has no application to a Rule 202 petition.[3]

defamation claims were based on his protected right to petition. *Id.* at 605–07, at *3–4. The court concluded that a Rule 202 petition is a "communication in or pertaining to . . . a judicial proceeding" within the meaning of the Act, and therefore, the movant's Rule 202 petition was an exercise of his right to petition. *Id.* at 606, at *3. The court also determined that the nonmovants' claims based on the movant's Rule 202 petition should have

been dismissed by the trial court because they were barred by his defense of the absolute privilege that protects communications made in the course of judicial or quasi-judicial proceedings. *Id.* at 608–09, at *6.

3. The parties only address whether the Act should apply to MagneGas's Rule 202 petition; they do not address its application to MagneGas's motion to compel.

We first consider whether Doe timely set his motion for hearing. Section 27.003 of the Act requires that "[a] motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action." *Id.* § 27.003(b); *see also James v. Calkins*, 446 S.W.3d 135, 142 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (concluding that voluntarily appearing party was not precluded from filing TCPA motion to dismiss). MagneGas filed its Rule 202 petition on January 22, 2016, but it did not serve Elliott with the petition until February 23, 2016, when it served him with its motion to compel to which it attached the petition as an exhibit. *See* Tex. R. Civ. P. 202.3(a) (requiring service of petition and notice of hearing to comply with Rule 21a); *id.* R. 21a (establishing requirements for service by mail). Doe filed his motion to dismiss on March 10, 2016, and served it on MagneGas that same day—16 days after Elliott was served with the Rule 202 petition.

Section 27.004 of the Act establishes that:

> A hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c) [allowing hearing to occur no later than 120 days after service of the motion if the court allows discovery under Section 27.006(b) ].

Tex. Civ. Prac. & Rem. Code § 27.004(a), (c). Doe first set the motion to dismiss for hearing on March 30, which is only 20 days after he served MagneGas with the motion. He later amended the notice of hear-ing, setting the motion to dismiss for hearing at the same time as Elliott's motions (which Doe had joined) that were set for hearing on April 28—only 49 days after March 10. Consequently, Doe's hearing date of April 28 was timely under the Act.

MagneGas further argues that "Doe has done absolutely nothing to prosecute" the motion to dismiss because "he has submitted no affidavit stating the factual bases for his claimed privilege under [Section] 27.006(a), he has sought no discovery under [Section] 27.006(b), and he has wholly failed to present his motion to [the district court] or to obtain any ruling on it." None of these criticisms are valid. Under Section 27.006(a) of the Act, the trial court may consider pleadings when determining whether to dismiss a legal action—the Act does not require a movant to present testimony or other evidence to satisfy his evidentiary burden. *See In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) ("[T]he court is to consider the pleadings and *any* supporting and opposing affidavits" when considering dismissal. (emphasis added)); *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.–Austin 2015, no pet.). Similarly, while Section 27.006(b) of the Act provides that "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion," nothing in the Act requires a party to seek discovery relevant to the motion. Tex. Civ. Prac. & Rem. Code § 27.006(b). And as discussed above, Doe timely set his motion for hearing; the hearing was stayed, along with all other proceedings, when we granted Elliott's motion for temporary relief on April 7. Accordingly, we conclude that Doe has not waived his motion to dismiss.

The crux of the matter here is whether Doe's filing of a TCPA motion to dismiss stayed all discovery in the Rule 202 pro-

ceeding. MagneGas argues that this Court should find that the TCPA has no application to a Rule 202 proceeding. MagneGas contends that the TCPA's purpose is to "dispose of lawsuits," that a Rule 202 petition is not a lawsuit, and that we should construe the word "petition" in the TCPA to mean a pleading that asserts a "cause of action" or a "claim."

■■■ We review issues of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our primary objective when construing statutes is to give effect to the Legislature's intent, which we seek first and foremost in the text of the statute. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). The plain meaning of the text is the best expression of legislative intent, unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We must apply the statute as written. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

■■■ On its face, the Rule 202 petition fits the description of covered filings under the TCPA—i.e., it is a petition or other judicial pleading or filing that seeks legal or equitable relief against Elliott—a presuit deposition—to enable MagneGas to investigate potential claims against the authors, publishers, and distributors of statements that MagneGas alleges are false and misleading, including Doe. *See* Tex. Civ. Prac. & Rem. Code § 27.001(6). MagneGas asserts in the Rule 202 petition that if

MagneGas confirms that the individuals affiliated with the PumpStopper or PumpStopper.com are publishing false and misleading information about MagneGas, MagneGas will know "that bringing a lawsuit *against those individuals* is warranted." (Emphasis added.) At the hearing on the Rule 202 petition, MagneGas stated it needs to identify these parties and that its claims could include defamation, market manipulation, and securities fraud.

The TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to ... speak freely ... to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. The Act accomplishes its purpose by providing a mechanism for early dismissal of "legal actions" that are based on a party's exercise of the right of free speech. *Id.* § 27.003. Doe alleges that his exercise of the right of free speech is the basis for MagneGas's Rule 202 petition seeking to depose Elliott to discover from him Doe's identity, which Doe asserts would violate Doe's First Amendment right to anonymous free speech. [4] Doe's TCPA motion to dismiss suffices to invoke the Act. The *merits* of Doe's TCPA motion to dismiss—including whether Doe is the proper movant within the statutory framework of the TCPA; whether the Rule 202 petition seeking to depose Elliott to discover Doe's identity is a legal action "against the movant"; whether, Doe, as movant, can show "by a preponderance of the evidence that the legal action [against him] is based on, relates to, or is in response to the party's

4. "Exercise of the right of free speech" means "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). " 'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). " 'Matter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

exercise of ... the right of free speech ....''; and whether MagneGas can avoid dismissal by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question"—are not before this Court because the district court has not yet heard or ruled on Doe's TCPA motion. *Id.* § 27.005(b)-(c).

MagneGas argues that we should construe the word "petition" as used in the definition of a "legal action" as the state-court analogue of a federal "complaint," meaning a pleading that asserts a "cause of action" or a "claim" because this reading would be consistent with MagneGas's view that the purpose of the statute is to dispose of lawsuits.[5] Based on the language of the TCPA, MagneGas's reading of the definition of "legal action" is too narrow. The Act broadly defines a "legal action" as "a lawsuit, cause of action, *petition,* complaint, cross-claim, or counterclaim or *any other judicial pleading or filing that requests legal or equitable relief.*" *Id.* § 27.001(6) (emphasis added).

Rule 202 requires a person seeking an order from the trial court for a presuit deposition to file a "petition." *See* Tex. R. Civ. P. 202.1 ("A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions ...."); *id.* R. 202.2 (entitled "Petition"; establishing requirements for

petition); *id.* R. 202.3 ("[T]he petitioner must serve the petition ...."); *see also Black's Law Dictionary* 1261 (9th ed.) ("Petition" means "formal written request presented to a court or other official body ...."). When construing the Act, we presume that the Legislature included each word in the statute for a purpose and that the Legislature promulgated the definition of a "legal action" in the Act with an awareness of the Texas Rules of Civil Procedure, including Rule 202's provision for the filing of a "petition."[6] Furthermore, the history of the Rule demonstrates that the Rule 202 "petition" is also a judicial pleading or filing that requests equitable relief.

The genesis of Rule 202 is in equity. Rule 202 incorporates two repealed Rules. *See In re Doe (Trooper),* 444 S.W.3d 603, 605 (Tex. 2014). Repealed Rule 737 provided for a bill of discovery, which was originally an English common-law equitable device for obtaining discovery from an opposing party in a pending suit by filing the bill in chancery (a court of equity). *Id.* at 606–07 & nn.10–14 (addressing repealed Rule 737 and bills of discovery). Repealed Rule 187 also derived from an English common-law equitable proceeding to perpetuate testimony in imminent danger of being lost, typically by the death or departure of the witness. *See Trooper,* 444 S.W.3d at 605–06 & nn.8–9

---

**5.** MagneGas derives its construction of the Act's purpose from the supreme court's statement in *In re Lipsky* that "[t]he TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." 460 S.W.3d 579, 589 (Tex. 2015). The supreme court's statement was made in an appeal from a lawsuit, and the definition of a "legal action" under the Act was not at issue in that case. The court's paraphrase of the Act's purpose does not override the statutory definition of a "legal action."

**6.** *See* Tex. Gov't Code § 22.004(a)-(d) (establishing that supreme court has full rulemaking power concerning practice and procedure in civil actions and that rules and amendments remain in effect unless and until disapproved by Legislature); *In re M.N.,* 262 S.W.3d 799, 802–03 (Tex. 2008) (construing statute in light of Legislature's knowledge of related rules of civil and appellate procedure); *see also American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex. 2001) (noting that we presume Legislature had full knowledge of existing condition of the law when enacting statutes).

(addressing repealed Rule 187 and proceedings to perpetuate testimony); *see also* Elton M. Montgomery, Note, *Evidence—Proceeding to Perpetuate Testimony—Ramsey v. Gardner, 154 Tex. 457, 279 S.W.2d 584 (Tex. Sup. 1955)*, 34 Tex. L. Rev. 319, 319 (1955) ("The bill to perpetuate testimony was originally an independent suit in equity to aid a future suit in the courts of law."). Before Rule 202.1(b) incorporated repealed Rule 737, relief by a bill of discovery was to be granted "in accordance with the usages of courts of equity [and] [s]uch remedy shall be cumulative of all other remedies." *Trooper*, 444 S.W.3d at 606–07 & n.11. Thus, the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy.[7] In addition, Black's Law Dictionary defines "relief" as "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance) that a party asks of a court"; it defines "benefit" as "[a]dvantage; privilege." *Black's Law Dictionary* 178, 1404 (9th ed. 2009). A trial court's grant of a Rule 202 petition ordering a person to be deposed before a suit is filed provides a party with a benefit that it would not otherwise be entitled to receive.

In addition, the Texas Supreme Court, in the context of considering whether the statute limiting discovery in health-care lawsuits precludes Rule 202 presuit depositions, has recognized that a " 'cause of action' relates to facts, whether or not suit is ever filed." *In re Jorden*, 249 S.W.3d at 421–22 (holding that statute that specifically applies to "a cause of action against a health care provider" applies both before and after a cause of action is filed and therefore precludes Rule 202 depositions to investigate potential claims against health-care providers). MagneGas's Rule 202 petition asserts a set of facts giving rise to its potential claims. For all these reasons, the TCPA's broad definition of "legal action" encompasses MagneGas's Rule 202 petition.

■ Furthermore, the Act's plain language provides that although the court may allow specified and limited discovery *relevant to the TCPA motion to dismiss* on a showing of good cause, otherwise "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss." Tex. Civ. Prac. & Rem. Code §§ 27.003(c), .006(b). The district court's order granting MagneGas's Rule 202 petition was not the "specified and limited discovery *relevant to the [TCPA] motion [to dismiss]*" that the Act contemplates. *Id.* § 27.006(b) (emphasis added). The district court had no discretion to order a deposition based on MagneGas's Rule 202 petition before ruling on Doe's TCPA motion to dismiss, and consequently, we will conditionally grant Elliott's petition for writ of mandamus. Because we conclude that the TCPA requires a stay of all discovery until the district court rules on Doe's motion to dismiss, we need not reach Elliott's other issues related to the Rule 202 petition.

Our discussion of the TCPA and its standards is specifically limited to the is-

---

**7.** The Restatement (Third) of Restitution and Unjust Enrichment explains that "[i]n restitution as elsewhere, equitable remedies may be distinguished from legal ones because they order the defendant to do something . . . ." *See* Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011); *see also* Lonny Sheinkopf Hoffman, *Access to Information, Access to Justice: the Role of Presuit* *Investigatory Discovery*, 40 U. Mich. J.L. Reform 217, 227-35 (2007) (describing development of Federal Rules of Civil Procedure and the Rules' eventual limitations on "an independent equitable action" for the purpose of discovery). In the case of a Rule 202 petition, the equitable remedy sought is an order requiring a potential defendant or third party to give a presuit deposition.

sues of whether Doe's motion to dismiss invokes the Act and whether the Act operates to stay discovery in a Rule 202 proceeding until the motion to dismiss is ruled upon. As previously mentioned, our discussion should not be interpreted as a comment on the merits of Doe's motion to dismiss. We conclude only that Doe's motion to dismiss invokes the TCPA, and accordingly, Doe's motion to dismiss stays all discovery in the Rule 202 proceeding until the district court rules on the motion to dismiss.

**The concurrence**

The concurrence suggests that the district court should have put aside the process set forth in the TCPA and instead engaged in an admittedly "unsettled" analysis to require a "threshold showing" when faced with a First Amendment objection raised in the Rule 202 proceeding below. Op. at 467–70. Citing to dicta in *In re Does 1–10*, 242 S.W.3d 805, 820–23 (Tex. App.–Texarkana 2007, orig. proceeding), the concurrence would conclude that this "threshold showing" is a precondition to unmasking anonymous speakers, thus providing a basis for the district court to avoid addressing the TCPA motion to dismiss that is the subject of this mandamus petition. We do not agree that *In re Does 1–10*, which predates the TCPA, mandates some "threshold showing" that would preempt the more settled framework of the TCPA now in place.

■ The concurrence also urges that including Rule 202 petitions in the Act's definition of a "legal action" is incompatible with TCPA Sections 27.005 and 27.006. Op. at 477–80. Contrary to the concurrence's suggestion, however, the process established for a trial court's consideration of a TCPA motion to dismiss can be applied in the context of a Rule 202 petition, construing the statute liberally as we have been instructed. *See* Tex. Civ. Prac. & Rem. Code § 27.011(b). The concurrence's concern over language in the TCPA referring to the "essential element of the claim" and the need to state facts on which the "liability" or "defense" is based deconstructs the Act at the expense of its plain meaning and the Legislature's intent, which is to safeguard citizens' rights to participate and speak freely by preventing the legal system from being used offensively to chill those rights.

In the Rule 202 proceeding here, MagneGas seeks Doe's identity from Elliott, which Doe asserts in his TCPA motion impinges on Doe's right of anonymous free speech. If Doe can show that Magne-Gas's Rule 202 petition seeking to discover Doe's identity from Elliott is a legal action against Doe and by a preponderance of the evidence that MagneGas's petition "is based on, relates to, or is in response to" Doe's exercise of the right of free speech— issues that the district court must consider before we may—the burden shifts to MagneGas to establish by clear and specific evidence a prima facie case for each essential element of "the claim in question," which Doe asserts in his motion to dismiss is "the challenged claim" of defamation that MagneGas seeks to investigate against Doe.[8] *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)-(c). In addition, if Doe establishes by a preponderance of the evidence each essential element of a valid defense to defamation, the district court shall dismiss the Rule 202 petition seeking to investigate those claims against Doe. *See id.* § 27.005(d).

---

8. We note that MagneGas did not specify the potential claims it seeks to investigate in its Rule 202 petition. It only indicated that its claims could include market manipulation and securities fraud at the hearing on the Rule 202 petition. We take no position on the merits of Doe's ability to challenge those additional potential claims.

When hearing the TCPA motion to dismiss, in addition to the motion, the district court must "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The concurrence asserts that this language is incompatible with a Rule 202 petition because the petition seeks a deposition to investigate or preserve evidence that may be relevant to a liability or defense, not to impose liability or assert a defense. Op. at 479. As explained above, however, in addition to Doe's motion to dismiss, the district court will have before it the Rule 202 petition asserting the set of facts giving rise to the potential claims MagneGas seeks to investigate. Both these documents state the facts on which the liability for or defense to the potential claims is based, and the language of the Act also permits both parties to submit supporting and opposing affidavits.[9] *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

In avoiding application of the TCPA's framework, the concurrence continues to strain against the broad wording of the TCPA, digging deeper [10] and deeper [11] to interpret the TCPA in a way that seems to ignore its plain and broad language—language intended to prevent the use of litigation, including depositions ordered under Rule 202, to discourage public participation through the exercise of protected rights like free speech. The concurrence's interpretation provides no clarity to the parties or the district court and serves only to make a complicated area of Texas law more complicated. In the Rule 202 context, on the record presented in this case, Doe's asserted right of anonymous free speech can best be balanced with MagneGas's right to file a meritorious lawsuit by requiring the district court to hear the TCPA motion to dismiss before ordering a presuit deposition.

## CONCLUSION

Having concluded that the TCPA stays all discovery until the trial court rules on a motion to dismiss filed under the Act, we conditionally grant Elliott's petition for writ of mandamus and direct the district court to vacate its March 11, 2016 order on MagneGas's Rule 202 petition. *See* Tex. R. App. P. 52.8(c). The writ will issue only if the district court fails to comply. We also lift the stay of the underlying proceedings. *See id.* R. 52.10(b).

Concurring Opinion by Justice Pemberton

## CONCURRING OPINION

Bob Pemberton, Justice

While I join in the Court's judgment conditionally granting mandamus relief, I

---

**9.** Application of the TCPA process in a Rule 202 proceeding, as in a lawsuit, may require the party seeking equitable relief to provide more than "mere notice pleading." *See In re Lipsky*, 460 S.W.3d at 590–91 (explaining that pleadings that might suffice to meet the notice-pleading standard in a non-TCPA case may not be enough to satisfy the TCPA's clear-and-specific evidentiary requirement). The party "must provide enough detail to show the factual basis for its claim," or in a Rule 202 proceeding, its potential claim. *See id.* at 591. As the supreme court commented in the Rule 202 context, when holding that the Rule 202 petitioner and potential plaintiff must bear the burden of pleading allegations showing personal jurisdiction over a potential defendant, "[w]e recognize that this burden may be heavier in a case like this .... [b]ut even so, Rule 202 does not guarantee access to information for every petitioner who claims to need it." *In re Doe (Trooper)*, 444 S.W.3d 603, 610 (Tex. 2014).

**10.** *See Serafine v. Blunt*, 466 S.W.3d 352, 377 & n.66 (Tex. App.–Austin 2015, no pet.) (Pemberton, J., concurring).

**11.** Op. at 474–75.

must respectfully differ with its reasoning. The Court can—and should—resolve this discovery-related original proceeding without need to address the intricacies of the Texas Citizens Participation Act (TCPA).[1] In fact, the relator, Elliott, would have no grounds for relief under the TCPA if the Act is construed in the manner the Court advocates. Worse, the Court's unwarranted broad pronouncements regarding the nature of a "legal action" under the TCPA also misread the Act and will sow further confusion and misapplication in future cases, to the detriment of the Legislature's underlying policy goals.

## WHAT THIS CASE IS ACTUALLY ABOUT

This original proceeding arises from what is, at its core, a discovery dispute, albeit one implicating some First Amendment concerns. That dispute has centered on the attempt by MagneGas to obtain, through Rule of Civil Procedure 202, a deposition calculated to unmask the anonymous person or persons behind "The Pump Stopper's" December 2015 article without regard to First Amendment limitations on that discovery. The First Amendment has been authoritatively held to encompass a right to speak anonymously,[2] and this is no less so when the speech is communicated on the Internet.[3] As with other aspects of First Amendment protections, this right is not absolute[4] and may yield in instances where the First Amendment would not bar remedy for the speech in question, such as when the speech is actionable defamation.[5] The potential claims that MagneGas purports to investigate here are the sort that might eventually be shown to fall into that category, predicated as they are on publication of alleged "false and misleading information" about the company.[6] But this does not mean that MagneGas can obtain discovery to unmask "The Pump Stopper" based on its Rule 202 petition alone. Rather, because the First Amendment right to anonymous speech would be rendered meaningless if it could be pierced merely by pleading a potentially actionable speech-based claim, a prevailing rule has evolved whereby the claimant must also make a threshold showing of the claim's potential merit (short of proving the alleged wrongdoer's identity) as a precondition for that discovery.[7]

The precise threshold showing of merit required of the claimant remains some-

1. *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 4, 2011 Tex. Gen. Laws 961, 964 (effective June 17, 2011), *codified at* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

2. *See Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 199–200, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342–43, 356, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).

3. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

4. *See McIntyre*, 514 U.S. at 353, 115 S.Ct. 1511.

5. *See In re Does 1–10*, 242 S.W.3d 805, 820 (Tex. App.–Texarkana 2007, orig. proceeding) (compiling authorities to effect that anonymous speakers "may not freely defame individuals without facing civil responsibility for their acts").

6. Although MagneGas's Rule 202 petition does not specify the legal theories on which it expects to rely, its counsel indicated during the hearing on the petition that defamation, "market manipulation," and "securities fraud" are among the possibilities counsel foresees.

7. *See Does 1–10*, 242 S.W.3d at 820–21 (compiling authorities).

what unsettled,[8] although the single Texas state appellate court that has considered the question thus far—our sister court in Texarkana—applied a "prima facie case for each essential element of the claim in question" standard having some parallels to Section 27.005(c) of the TCPA, the Act's provision prescribing the claimant's required showing to avoid dismissal in the event the movant meets its initial burden.[9] In fact, some anecdotal historical sources assert that the drafters of Section 27.005(c) borrowed the provision's "prima facie case for each essential element of the claim in question" component from the Texarkana opinion, so as to extend to all

speakers the protections our sister court held to apply to anonymous speakers,[10] although the Act's text does not state this explicitly.[11] Regardless, we can at least conclude that the First Amendment requires *some* threshold showing of a claim's potential merit as a precondition of unmasking the anonymous speaker or speakers. [12] And the TCPA did not diminish this preexisting First Amendment protection for anonymous speech, nor could have, but instead explicitly disclaimed any intent to "abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case,

8. *See id.* at 821–23.

9. *Compare Does 1–10*, 242 S.W.3d at 821–23 ("[T]o obtain discovery of an anonymous defendant's identity ..., a defamation plaintiff must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question ... *within plaintiff's control*." (quoting *Best W. Int'l v. Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695 at *4, 2006 U.S. Dist. LEXIS 56014 at *12 (D. Ariz. July 25, 2006, order) (quoting *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005)) (alterations in original))), *with* Tex. Civ. Prac. & Rem. Code § 27.005(c) (assuming movant meets initial burden prescribed in (b), "the party bringing the legal action" can avoid dismissal if it "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question").

10. *See* Laura Lee Prather & Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech L. Rev. 725, 748–49 (2015) ("The ["prima facie case for each essential element of the claim in question"] test is derived from *In re Does* .... By incorporating this test into the [TCPA], the [L]egislature chose to apply the same standard to claims brought against non-anonymous speakers as claims brought against anonymous ones."); *see also* Hearings on S.B. 1565 before Senate Committee on State Affairs, 82d Leg., R.S. 3–4 (Apr. 4, 2011) (transcript available from Capitol Research Services) (Prather testifying that standard is "the same analysis that is done in an anony-

mous speech case, where somebody comes forward and they want to know what—what the web—web address is behind a person who's posted an anonymous blog. The court looks at the very beginning of the case to determine whether or not there is any basis for the lawsuit. And if they determine that there is a basis for the lawsuit, they can get that anonymous speaker's information. If they don't determine that, then they can't get the anonymous speaker's information. So this just creates the same level playing field for anonymous and non-anonymous speech."). Prather, an attorney who represents open-government and media interests, is widely credited with an integral advocacy role in the TCPA's drafting and passage by the Legislature.

11. *Cf. Serafine v. Blunt*, 466 S.W.3d 352, 367 (Tex. App.-Austin 2015, no pet.) (Pemberton, J, concurring) (observing, with regard to anti-SLAPP concern emphasized by the TCPA's legislative advocates, "the text of the Act itself makes no explicit mention of SLAPPs, nor of any related concept like sham litigation[,] [a]nd, as the Texas Supreme Court has repeatedly instructed lower courts, we are to rely upon the statutory text the Legislature actually used, not extrinsic legislative history or other possible indicia of what legislators might have meant subjectively, as our paramount guide to the 'legislative intent' we are to ascertain and follow faithfully." (citations omitted)).

12. *See Does 1–10*, 242 S.W.3d at 820–21.

or common law or rule provisions."[13]

The district court ordered Elliott's Rule 202 deposition without requiring a threshold showing of any kind regarding the merits of MagneGas's potential claims and despite objections from Elliott and one of the anonymous speakers (Doe) that preserved the complaint. Elliott brings this First Amendment objection forward as his principal asserted ground for mandamus relief. This ground plainly has merit, and mandamus relief should conditionally issue for this reason alone.[14] This Court needed to say no more at this juncture.

## THE TCPA IS UNHELPFUL IN RESOLVING THIS CASE

The Court chooses a more circuitous analytical path, endorsing a novel alternative theory aimed at invoking the TCPA's more general protections against speech-based claims and related discovery. Prior to the hearing on MagneGas's Rule 202 petition, counsel representing the anonymous speaker Doe (who, incidentally, also represents Elliott, the witness whose deposition was being sought) filed on Doe's behalf what purports to be a "motion to dismiss" the Rule 202 petition under TCPA Section 27.003(a), the Act's provision authorizing a motion to dismiss "a legal action" alleged to be "based on, relate[d] to, or . . . in response to a party's exercise of the right of free speech, right to petition, or right of association."[15] In turn, emphasizing the "motion to dismiss"

filed for Doe, Elliott asserted that the Rule 202 deposition was automatically stayed by TCPA Section 27.003(c), which provides generally that "on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."[16] Because there is no question that the Rule 202 deposition MagneGas seeks would be "discovery" within the meaning of Section 27.003(c)[17] and that the district court did not rule on Doe's "motion to dismiss" before signing the challenged order granting the Rule 202 deposition, Elliott's entitlement to relief under (c) turns on whether Doe's motion was in fact "a motion under this section" triggering the stay—i.e., a "motion to dismiss" authorized by (a)—and whether the deposition MagneGas seeks would be "discovery *in the legal action*" Doe has moved to dismiss.

The Court endorses Elliott and Doe's creative invocation of the TCPA, and the cornerstone of its reasoning is that MagneGas's Rule 202 petition or proceeding is, *in itself*, a "legal action" that Doe could move to dismiss under Section 27.003(a), making the requested deposition—the sole relief sought in that "legal action"—also "discovery in the legal action" that is suspended by 27.003(c). As an initial observation, the Court's venture into the intricacies of the TCPA is ultimately of little practical value in resolving the pivotal issue in this proceeding—which, again, centers on the ex-

13. Tex. Civ. Prac. & Rem. Code § 27.011(a).

14. *See In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (per curiam) (orig. proceeding) ("An improper order under Rule 202 may be set aside by mandamus." (citing *In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008) (orig. proceeding); *see also In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (per curiam) (orig. proceeding) ("A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when

it acts without reference to guiding rules and principles.") (citation omitted).

15. Tex. Civ. Prac. & Rem. Code § 27.003(a).

16. *Id.* § 27.003(c).

17. *See Jorden*, 249 S.W.3d at 420 (holding that Rule 202 depositions fall within Medical Liability Act's general ban of "all discovery" in a "healthcare liability claim" prior to service of expert report).

tent to which MagneGas can obtain discovery of the identity of the Doe or Does behind "The Pump Stopper's" article in light of the First Amendment right to speak anonymously. The Court has merely shifted the procedural context of the controlling First Amendment analysis from a threshold consideration controlling Magne-Gas's primary asserted right to obtain the information via Rule 202 to more peripheral battlegrounds within the TCPA's procedural framework, including whether Doe has met his initial burden under TCPA Section 27.005(b)[18] and then whether MagneGas can obtain that same information in the guise of "specified and limited discovery relevant to the [dismissal] motion" authorized by TCPA Section 27.006(b).[19] The latter issue would squarely implicate Doe's First Amendment right to speak anonymously, and thus the parties would revolve back to the same First Amendment dispute already raised directly by MagneGas's Rule 202 petition itself.

Under the circumstances here, at least, overlaying the parties' First Amendment dispute with the TCPA's procedural framework serves only to delay and complicate resolution unnecessarily, contrary to the Act's manifest purposes to secure quick and inexpensive dismissal of meritless "legal actions" that threaten expressive freedoms.[20] The parties—and the jurisprudence—are better served by resolving this proceeding based on Elliott's First Amendment objection rather than through the Court's unnecessary analytical detour through the Act.

## IN ANY EVENT, ELLIOTT WOULD HAVE NO RIGHT TO RELIEF UNDER THE TCPA IF THE COURT'S CENTRAL PREMISE IS CORRECT

Moreover, if, as the Court holds, Magne-Gas's Rule 202 petition is the relevant "legal action" under the TCPA, that central premise would be fatal to Elliott's attempt to invoke the discovery stay under Section 27.003(c). This is apparent from the text of TCPA Section 27.003(a), which states in full: "If a legal action is based on, relates to, or is in response to *a party's* exercise of the right of free speech, right to petition, or right of association, *that party* may file a motion to dismiss the legal action."[21] A "party" denotes a person named in a pleading against whom the relief is sought. [22] Consequently, accepting

18. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b) (moving party must "show[ ] by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of" protected expression as defined in the TCPA).

19. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(c), .006(b). If, as the Court holds, MagneGas would have to present a "prima facie case for each essential element" of MagneGas's underlying potential claims, *see id.* § 27.005(c), Op. at 477–78, MagneGas ordinarily could not meet that burden without identifying the potential alleged wrongdoer, prompting the need for discovery of that identity through 27.006(b).

20. *See id.* § 27.002 ("The purpose of this chapter [the TCPA] is to encourage and safe-guard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *id.* §§ 27.003–.005 (prescribing mechanisms for threshold testing and expedited dismissal of "legal actions" that implicate expression the Act protects).

21. *Id.* § 27.003(a) (emphases added).

22. *See Zanchi v. Lane*, 408 S.W.3d 373, 377–80 (Tex. 2013) (construing "party" as used in Medical Liability Act's expert-report requirement, relying in part on dictionary definitions and usage in Texas Rules of Civil Procedure).

the Court's premise that MagneGas's Rule 202 petition is the relevant "legal action," only Elliott, not Doe, could be considered "a party" authorized by Section 27.003(a) to file a "motion to dismiss." And because it is solely the non-"party" Doe, not Elliott, that would have filed a "motion to dismiss" here, there would be no "motion under this section" that triggered Section 27.003(c)'s suspension of "discovery in the legal action." [23] Accordingly, the Court's own theory of this case would eviscerate Elliott's claimed entitlement to mandamus relief under Section 27.003(c). The Court's detour through the TCPA should go no further.

## THE COURT'S VIEW OF A TCPA "LEGAL ACTION" IS MISTAKEN AND PROBLEMATIC

The Court proceeds nonetheless to pronounce that Rule 202 proceedings, or at least those like MagneGas's that seek to investigate potential claims, are in themselves "legal actions" subject to motions to dismiss under TCPA Section 27.003(a). [24] In so doing, the Court speaks to what is apparently an "issue of first impression" [25] regarding the interaction between Rule 202 and the TCPA. [26] Even more significant to the jurisprudence are the implications of the Court's underlying analysis regarding the nature and scope of a "legal action" under the TCPA. As I've urged my colleagues previously, the TCPA's "legal action" definition is among the Act's features whose facially broad wording invites attempts by resourceful litigants to extend the Act's powerful dismissal and cost-shifting mechanisms to a vast range of cases and court filings having little to do with any conventional understanding of the First Amendment, [27] let alone the SLAPP paradigm emphasized by the Act's champi-

23. *See* Tex. Civ. Prac. & Rem. Code § 27.003(c) ("... on the filing of a motion *under this section*, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss." (Emphasis added)).

24. *See* Op. at 470–72, 473–77.

25. *See id.* at 7.

26. This issue is a sort of converse to the one addressed recently by our Dallas sister court, which held that statements made in a Rule 202 petition qualify as an "exercise of the right to petition" protected by the TCPA against a "legal action" that is "based on, relates to, or is in response to" such "exercise." *See Watson v. Hardman*, 497 S.W.3d 601, 2016 WL 3626091, No. 05–1501355–CV, 2016 Tex. App. LEXIS 7111 (Tex. App.–Dallas July 6, 2016, no. pet. h.) (reasoning that "Rule 202 proceeding is a 'judicial proceeding' for Chapter 27 purposes," such that the Rule 202 petition was "a communication in or pertaining to a judicial proceeding" (citing Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i) (defining "exercise of the right to petition" as, inter alia, "a communication in or pertaining to ... a judicial proceeding")); *accord Serafine*, 466 S.W.3d at 359–60 (holding that lawsuit

and related lis pendens filing sufficed as "exercise of the right to petition" because these were "communication[s] in or pertaining to ... a judicial proceeding," namely the suit itself); *id.* at 377–90 (Pemberton, J., concurring) (agreeing with that conclusion under analysis of "exercise of right to petition" definition informed by background First Amendment principles).

27. *See Serafine*, 466 S.W.3d at 370 (Pemberton, J., concurring) (noting that "some of our sister courts have observed [that] 'legal action' would facially encompass even motions, such as those seeking summary judgment or sanctions, at least to the extent that relief would be considered 'legal or equitable relief'" and that "the same logic" would seemingly apply "even [to] dismissal motions asserted under the TCPA itself ... if dismissal with cost-shifting and sanctions can be considered 'legal or equitable relief.'" (citation omitted)). To be sure, a viable TCPA dismissal motion also requires proof by a "preponderance of the evidence" that the "legal action" (as it were) is "based on, relates to, or is in response to" the "exercise of" one of the expressive rights protected by the statute. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). But if those other analytical components are as

ons,[28] to the point of effectively creating a broadly applicable "de facto loser-pays regime tied to summary dispositions."[29]

To the extent any such ramifications truly reflect the Legislature's intent expressed through the TCPA, it is not our proper judicial role to countermand them, of course, barring some constitutional impediment. But a correct understanding of the TCPA requires more than first-blush impressions of words read in isolation—we must also consider the larger statutory and jurisprudential context that informs the meaning of statutory text.[30] And while the majority here scorns my insistence on such "deeper digging" and resultantly

"more complicated" view of the TCPA's "plain and broad wording,"[31] I make no apologies for undertaking the effort. For when courts fail to take account of both text and context in ascertaining the TCPA's meaning, they undermine not only the Legislature's intent in the statute (as with all statutes), but also "the sound operation of our civil justice system [and] the sometimes-competing rights of Texans"— including liberties and protections at the core of our governmental system—"that the statute was expressly intended to balance and reconcile."[32]

We must presume that the Legislature was aware of the existence of Rule 202 and

broad as this Court has reasoned previously, they would present but a small hurdle for creative lawyers and litigants. *Cf. Serafine*, 466 S.W.3d at 378–79 (Pemberton, J., concurring) (suggesting that if TCPA definitions of protected expression are read in isolation, a speaker could implicate all three categories of expression protected under the Act through a single sentence spoken privately to his or her spouse about a court case), 390 ("[W]hen combined with an 'exercise of the right to petition' ... that [has been construed to] encompass[] most (if not all) claims filed in court and a 'legal action' definition that seemingly encompasses most (if not all) claims filed in court, the effect of the prevailing construction [of "based on, related to, or in response to] ... is to make the TCPA available as a tactical weapon in a vast number of instances in which litigants assert competing claims against one another, at least for the party who files its claims first"); *see also Neyland v. Thompson*, No. 03–13–00643–CV, 2015 WL 1612155 at *12, 2015 Tex. App. LEXIS 3337 at *42 (Tex. App.–Austin Apr. 7, 2015, no pet.) (mem. op.) (Field, J., concurring) ("It seems that any skilled litigator could figure out a way to file a motion to dismiss under the TCPA in nearly every case, in the hope that the [legal action] will not only be dismissed, but that the movant will also be awarded attorneys' fees.").

**28.** *See Serafine*, 466 S.W.3d at 365–67 (Pemberton, J., concurring) (summarizing anecdotal legislative history emphasizing "anti-

SLAPP" concerns); *see also* Prather & Bland, *supra* note 10, at 725–801 (using "anti-SLAPP" throughout article to characterize TCPA's procedural mechanisms and policy goals).

**29.** *Serafine*, 466 S.W.3d at 390 (Pemberton, J., concurring).

**30.** *See, e.g., In re Office of the Att'y Gen.*, 456 S.W.3d 153, 155 (Tex. 2015) (per curiam) ("When construing statutes, or anything else, one cannot divorce text from context," as "[t]he meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them."); *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (noting role of background law in informing meaning of statutory text (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)); *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear." (citing *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n*, 573 S.W.2d 502, 505 (Tex. 1978)); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978))).

**31.** Op. at 478.

**32.** *Serafine*, 466 S.W.3d at 394 (Pemberton, J., concurring). And I remain hopeful that someone outside this three-judge panel might be listening. *See id.* at 394–95.

the pre-suit depositions it authorizes when enacting the TCPA,[33] as these mechanisms predate the Act.[34] Yet the Legislature did not explicitly mention Rule 202 or pre-suit depositions anywhere in the TCPA. But it did provide a definition for "legal action," as previously noted:

> a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.[35]

This definition "is both expansive and varied, referring to an entire action or proceeding ('lawsuit'); particular pleading instruments and claims for relief ('petition, complaint, cross-claim, or counterclaim,' plus the catch-all of 'any other judicial pleading or filing that requests legal or equitable relief'); and also 'cause of action,' which generally denotes particular facts that would entitle a person to seek some form of legal or equitable relief."[36]

The Court asserts that a Rule 202 petition qualifies as a "legal action" by virtue of two of these components of the TCPA definition. First, the Court relies on "petition," deducing that because Rule 202 terms the pleading made under that rule a "petition,"[37] ergo that pleading is a "petition" under the TCPA's "legal action" definition as well.[38] Second, the Court reasons similarly that a Rule 202 petition seeking to investigate potential claims (the specific remedy MagneGas seeks under the rule) falls within "any other judicial pleading or filing that requests ... equitable relief," emphasizing that this remedy now authorized under Rule 202 can be termed "equitable" to the extent it derives historically from the former Rule 737 bill of discovery and then from remedies provided by English chancery courts.[39] I'll grant that the word "petition" appears in both Rule 202 and the TCPA "legal action" definition, and I have no quarrel with the Court's basic depiction of Rule 202's historical origins;[40] in fact, I'd add that vestiges of the equitable concepts that guided application of Rule 202 antecedents have survived in the current rule itself.[41] But these observa-

---

33. *Allen*, 366 S.W.3d at 706 (quoting *Acker*, 790 S.W.2d at 301)).

34. *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 4, 2011 Tex. Gen. Laws 961, 964 (effective June 17, 2011); *In re Doe (Trooper)*, 444 S.W.3d 603, 605–07 & nn.8–12 (Tex. 2014) (orig. proceeding) (discussing Rule 202's adoption as part of the 1999 Texas civil discovery rules revisions and that rule's historical antecedents).

35. Tex. Civ. Prac. & Rem. Code § 27.001(6).

36. *Serafine*, 466 S.W.3d at 370 (Pemberton, J., concurring) (citing *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563–71 (Tex. 2014) (plurality op.) (discussing at length the distinctions between an "action," "lawsuit," or "proceeding" and a "cause of action" (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *A.H. Belo Corp. v. Blanton*, 133 Tex. 391, 129 S.W.2d 619, 621 (1939); *Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.–Houston [14th Dist.] 1992, writ denied); *Elmo v. James*, 282 S.W. 835, 839 (Tex. Civ. App.–Fort Worth 1926, writ dism'd w.o.j.)))).

37. *See* Tex. R. Civ. P. 202.2.

38. Op. at 474–75.

39. Op. at 475–76 (citing *Trooper*, 444 S.W.3d at 606–07 & nn.10–14).

40. *See also* Nathan L. Hecht & Robert H. Pemberton, *A Guide to the 1999 Texas Discovery Rule Revisions*, at 17 (1998) (Texas Supreme Court's rules liaison justice and its then-Rules Attorney explaining that "Rule 202 is a rewrite of former Rule 187 that is broadened somewhat to expressly permit discovery depositions prior to suit and to investigate potential claims. To this extent, Rule 202 replaces and limits the 'bill of discovery' of repealed Rule 737.").

41. *See* Tex. R. Civ. P. 202 cmt. 1 (noting that Rule 202 "applies to all discovery before suit

tions in themselves tell us little regarding the meaning and sense in which the Legislature used "petition" and "equitable relief" *in the TCPA's "legal action" definition.* That inquiry requires deeper digging into the context of usage both within the definition and in the TCPA as a whole,[42] and we cannot merely assume that the Legislature intended whatever meanings of "petition" or "equitable relief" might exist elsewhere. Although the term "petition" is sometimes used more broadly or generically in regard to court filings, as in the Rule 202 "petition,"[43] the term also has a narrower, more technical connotation—the pleading instrument prescribed under the Texas Rules of Civil Procedure through which a plaintiff initiates and maintains a civil suit.[44] This sort of "petition" seeks substantive relief, as evident in the rules' additional requirements that the "petition" include allegations giving fair notice of "the cause of action" (again, the facts giving rise to a substantive right of relief) supporting "a claim for relief."[45] This narrower usage of "petition" thus corresponds not only to the definition's accompanying references to "lawsuit" (the entire action being brought) and "cause of action" (factual bases for particular claims for relief that may be asserted within a lawsuit), but also the references to pleading devices through which parties in a lawsuit assert substantive claims or causes of actions—"complaint" (the federal counterpart to the Texas "petition"),[46] and "counterclaim" and "cross-claim" (terms for pleadings through which defendants assert such claims or causes of action under both the Texas and federal rules).[47] And this understanding of the meaning and scope of "petition" would not be altered by the definition's concluding catch-all component, "any other judicial pleading or filing that requests legal or equitable relief." Rather, the converse is true: "any other judicial pleading or filing that requests legal or equitable relief" is to be construed to have meaning and scope limited contextually to the same general kind or class as the specific references that precede it.[48] These contextual consider-

covered by former rules governing depositions to perpetuate testimony and bills of discovery"); *id.* at cmt. 2 ("The bill of discovery procedure, which Rule 202 incorporates, is equitable in nature, and a court must not permit it to be used inequitably.").

42. *See Office of the Att'y Gen.,* 456 S.W.3d at 155; *Bridgestone/Firestone, Inc.,* 878 S.W.2d at 133; *see also, e.g., City of Lorena v. BMTP Holdings, L.P.,* 409 S.W.3d 634, 641 (Tex. 2013) ("We examine statutes as a whole to contextually give meaning to every provision." (citing *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex. 2002))).

43. *See, e.g.,* Tex. R. Civ. P. 329(a) (referring to trial court grant of new trial "upon petition of the defendant"); Tex. R. App. P. 52 ("petition" for relief in original proceedings); *id.* R. 53 ("petition for review" in Texas Supreme Court).

44. *See* Tex. R. Civ. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."); *see also id.* R. 500.2(t) (similarly defining "petition" in Justice Court as "a formal written application stating a party's claims and requesting relief from the court" and "is the first document filed with the court to begin a lawsuit").

45. *See id.* R. 47.

46. *See* Fed. R. Civ. P. 3.

47. *See* Tex. R. Civ. P. 97; Fed. R. Civ. P. 13.

48. *See, e.g., Ross v. St. Luke's Episcopal Hosp.,* 462 S.W.3d 496, 504 & n.1 (Tex. 2015) (applying doctrine of ejusdem generis—"when words of a general nature are used in the connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"—in construing "catchall" reference to claims for "other claimed departure from accepted standards of

ations point toward an intended usage of "petition" in the sense of the pleading through which a plaintiff brings a lawsuit and asserts substantive causes of action or claims for relief against another, as opposed to the "petition" used to obtain discovery under Rule 202.

Whether a Rule 202 petition might fall within "any other judicial pleading or filing that requests ... equitable relief"—the Court's alternative rationale—is potentially a closer call, at least when considering the internal structure of the "legal action" definition standing alone. While the definition's "any other judicial pleading or filing that requests legal or equitable relief" catchall is contextually limited to the same general kind or class as the specific references preceding it,[49] we must presume that the Legislature did not intend a mere redundancy, either,[50] and thus that the catchall must presumably capture some range of "judicial pleading or filings" that are not necessarily a "lawsuit" or one of the pleading instruments previously enumerated within the definition, and would not necessarily assert a "cause of action." Similarly, the Texas Supreme Court's recent construction of somewhat parallel language in

the TCPA provisions governing fee awards would imply that the "... that requests legal or equitable relief" modifier should be construed to operate only against the definition's reference to "any other judicial pleading or filing" and not as to the preceding categories of pleadings or filings specifically listed in the definition.[51] These observations would suggest that the common kind or class "any other judicial pleading or filing that requests legal or equitable relief" shares with the definition's preceding components is being a "judicial pleading or filing" and not necessarily that the categories all seek "legal or equitable relief." [52] Whether this points to "legal or equitable relief" that is broader or narrower than the relief sought in a "lawsuit," "cause of action," "petition," etc., is not immediately apparent from the "legal action" definition in itself.

But the Court's notion that "equitable relief" within the definition refers to any "judicial pleading or filing" having equitable origins or components should give some pause. A Rule 202 petition seeking to investigate potential claims is hardly the only Texas "judicial pleading or filing" that would "request ... equitable relief" in this

---

... safety" in Medical Liability Act's definition of "health care liability claim" to require "a substantive relationship with the providing of medical or health care," consistent with definition's preceding references to claims for "treatment" or "lack of treatment" (quoting *Hilco Elec. Co-op v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) and citing Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 1999 (2012)).

**49.** *See id.*

**50.** *See, e.g., TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (noting presumption that the "Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposeful-

ly omitting words not chosen" (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))).

**51.** *See Sullivan v. Abraham*, 488 S.W.3d 294, 297–99 (Tex. 2016) (relying on last-antecedent canon and punctuation to conclude that "as justice and equity may require" modifier in Section 27.009(a)(1)'s mandatory award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require" applies only to "other expenses incurred" and not "court costs" or "reasonable attorney's fees").

**52.** *Cf. id.* (reasoning that provision's structure indicated that "court costs" and "reasonable attorney's fees" are types of "expenses incurred," while "as justice and equity require"

sense.[53] Moreover, as the Court seems to acknowledge, the bill of discovery originated as a means of obtaining through equity *any* discovery from parties *to a pending suit* in the era before modern discovery as a matter of right was made available.[54] To this extent, the equitable bill of discovery could be considered a historical antecedent not only to the Rule 202 pre-suit deposition to investigate claims, but also most if not all of the panoply of other discovery devices that the Rules of Civil Procedure now make available.[55] And while granting there are distinctions in timing and procedure, I question the extent to which the substantive nature of the relief awarded in a Rule 202 proceeding—at bottom, a court-ordered deposition of a nonparty—is materially different from a court order or even a subpoena compelling a deposition or other discovery from nonparties that is sought

under other rules.[56] Although I cannot fairly accuse the Court of endorsing a wholly unbounded notion of "legal action," the Court's reasoning would nonetheless imply that a vast range of court filings could be attacked through TCPA dismissal motions.

An alternative view of the "legal action" definition's reference to "legal or equitable relief" is that it denotes the traditional law-equity distinction that lives on in what are termed the "legal" versus "equitable" remedies obtainable when liability under some substantive right of recovery is proven; i.e., the "legal" remedy of money damages versus the "equitable" relief of injunctions, specific performance, and the like.[57] From this perspective, the catchall "any other judicial pleading or filing that requests legal or equitable relief" would function primarily as a safeguard against creative repleading of what are substan-

---

applies only to the concluding general category of "expenses incurred").

**53.** *See, e.g., Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) ("A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal.") (citations omitted); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939) (announcing guiding rule or principle—"ha[ving] the sanction of equity"—for trial courts to follow when deciding whether to set aside a default judgment and order a new trial); 5 McDonald & Carlson Tex. Civ. Prac. § 28:17 (2d. ed.) ("A motion for new trial may be based upon legal or equitable grounds. ... An equitable motion ... seeks to invoke the power of the court to grant a new trial even though the movant failed to timely act and suffered an adverse judgment."); *see also Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) ("Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." (citing *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941)).

**54.** Op. at 475–76 (citing *Trooper*, 444 S.W.3d at 606–07 & nn. 10–14).

**55.** *See Trooper*, 444 S.W.3d at 606–07 (suggesting that "the 1941 [Texas] Rules of Civil Procedure might have rendered [the bill of discovery in its original form] obsolete.").

**56.** *See* Tex. R. Civ. P. 176 (subpoena), 205 (discovery from nonparties).

**57.** *See, e.g.,* Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011) (noting "[e]lementary generalizations ... for the classification of remedies" within the law of restitution, including that "a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law" is presumptively a legal remedy, whereas "equitable remedies ... order the defendant to do something"); 1 Dan B. Dobbs, *Law of Remedies* § 1.2 (2d ed. 1993) ("The damages remedy was historically a legal remedy. The injunction and most other coercive remedies were equitable."); *see also Hanson Aggregates West, Inc. v. Ford*, 338 S.W.3d 39, 42–43 (Tex. App.–Austin 2011, pet. denied) (explaining that "equitable relief" of permanent injunction must be "supported by at least one valid underlying cause of action that is established either by conclusive evidence or fact findings," just as with remedy of money damages (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513–14 & n.2 (Tex. 1993))).

tively lawsuits, causes of action, petitions, complaints, counterclaims, or cross-claims so as to avoid the TCPA's dismissal mechanisms.

Examination of the TCPA as a whole confirms that the Legislature intended this narrower notion of "any other judicial pleading or filing that requests legal or equitable relief," as well as the more technical meaning of "petition" urged above. Instructive provisions begin with Section 27.005, which prescribes the standards under which Section 27.003(a) motions to dismiss "the legal action" are decided.[58] Assuming the movant meets its initial burden, Section 27.005(c) specifies that "the party bringing *the legal action*" can avoid its dismissal only if the party "establishes by clear and specific evidence a prima facie case for each *essential element of the claim in question*."[59] If that party makes that required showing so as to survive dismissal, Section 27.005(d) contemplates further burden-shifting back to the movant to "establish[ ] by a preponderance of the evidence each *essential element* of a valid *defense* to the nonmovant's *claim*."[60] And in performing these analyses and also in ascertaining whether a movant has met its initial burden, Section 27.006(a) directs trial courts to "consider the pleadings and supporting and opposing affidavits stating the facts on which *the liability* or *defense* is based."[61]

As we must presume the Legislature was aware,[62] Section 27.005(c)'s references to "*essential element* of the claim in question" is the nomenclature of substantive causes of action or theories of recovery, such as *particular torts, not of mere petitions seeking depositions under Rule 202.*[63] This is the sense in which the Texas Supreme Court has seemed to view Section 27.005(c) as well, often using "claim" in that provision interchangeably with "cause of action."[64] Similarly, one does not ordinarily raise "defenses" to a Rule 202 petition, as contemplated by Section 27.005(c),

**58.** *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)–(d).

**59.** *Id.* § 27.005(c) (emphases added).

**60.** *Id.* § 27.005(d) (emphases added).

**61.** *Id.* § 27.006(a) (emphases added).

**62.** *See, e.g., Allen,* 366 S.W.3d at 706 ("'A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'" (quoting *Acker,* 790 S.W.2d at 301)); *see also* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

**63.** *See, e.g., Gharda USA, Inc. v. Control Solutions, Inc.,* 464 S.W.3d 338, 353 (Tex. 2015) (referencing "essential elements" of "negligence claim" and "manufacturing defect claim"); *Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex. 1979) ("In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty ... *the elements of plaintiff's cause of action and the relief sought* with sufficient information upon which to base a judgment.") (emphasis added) (citation omitted); *see also* Tex. R. Civ. P. 279 (referring to "elements" of "independent grounds of recovery or of defense"); *cf.* Tex. R. Civ. P. 202 (no reference to "elements" or "essential elements" of grounds for order).

**64.** *See KBMT Operating Co. v. Toledo,* 492 S.W.3d 710, 713 (2016) (under Section 27.005, "KBMT was entitled to dismissal unless [the claimant] established a prima facie case for each element of a defamation cause of action."); *In re Lipsky,* 460 S.W.3d 579, 590–91 (Tex. 2015) ("clear and specific evidence" of "each essential element of the claim" requires more than "general allegations that merely recite the elements of a cause of action .... Instead, a plaintiff must provide enough detail to show the factual bases for its claim.").

as opposed to asserting objections or grounds for protection under the civil discovery rules, let alone prove up "essential elements" to obtain that protection. And perhaps even more significantly, a Rule 202 petition does not seek to impose "liability" or interpose a "defense," the focus of the evidence according to Section 27.006(a)—the petition seeks a deposition to *investigate* potential liability or defenses or preserve *evidence* that may be relevant to liability or a defense. This analysis is incapable of being applied to a "legal action" that consists only of a Rule 202 petition. The analysis could be applied, however, to the "legal action" that consists of the underlying potential claims for relief or anticipated suit on which a Rule 202 petition is predicated—and I will return to that observation momentarily.

The Court does not contend otherwise—in fact, it acknowledges that the "claim in question" under Section 27.005 (i.e., that which has "essential elements," seeks to impose "liability," and has "defenses" with "essential elements") must necessarily refer to the alleged potential claims underlying a Rule 202 petition and not to the petition itself.[65] The Court insists, rather, that Section 27.005 leaves open the possibility that the "claim in question," while potentially a "legal action" under the TCPA definition, need not necessarily be a "legal action," such that the relevant "legal action" can be the Rule 202 petition even while the underlying potential claims are the "claim[s] in question" on which analysis focuses.[66] I will acknowledge that Section 27.005 refers to "each essential element of *the claim* in question" rather than explicitly to "each essential element of *the legal action* in question," but this is plainly the import of "each essential element of the claim in question" when read in the context of Section 27.005's burden-shifting framework and the TCPA's broader purpose to ferret out non-meritorious lawsuits that implicate expressive liberties. That there is a "claim" for substantive relief placed *"in question"* by a TCPA motion to dismiss a "legal action," as Section 27.005 presumes, signals that such motions inherently seek to test the meritoriousness of that substantive claim, with the consequences of quick dismissal of that claim if it fails the testing.[67] Section 27.005 does not contemplate attacks on peripheral filings or proceedings like Rule 202 petitions as ends in themselves, as the Court holds.

The Court insists that any such doubts regarding textual support for its construction should be overlooked because the Legislature directed that the TCPA be "construed liberally to effectuate its purpose and intent fully."[68] But a legislative mandate that we "liberally construe" a statute does not authorize us to ignore, rewrite, or displace the text the Legislature has actually used[69]—nor can it, with-

---

65. *See* Op. at 477–78.

66. *See id.*

67. *See* Tex. Civ. Prac. & Rem. Code § 27.002 ("The purpose of this chapter [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *see also Serafine*, 466 S.W.3d at 375 (Pemberton, J., concur-

ring) (suggesting that TCPA's dismissal mechanisms may operate similarly to Medical Liability Act's expert-report requirements to extent it requires threshold testing of potential meritoriousness of certain claims).

68. Op. at 477 (citing Tex. Civ. Prac. & Rem. Code § 27.011(b)).

69. *See, e.g., Holmes v. Morales*, 924 S.W.2d 920, 923–25 (Tex. 1996) (rejecting—notwithstanding Public Information Act's "liberal construction" mandate—Attorney General's "impermissible administrative limitation

out raising separation-of-powers concerns.[70] In any event, translating the TCPA's "liberal construction" directive into a specific application of the Act is more complicated than the Court presumes. The Legislature specified that the TCPA's "purpose" is a dual mandate: "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law *and, at the same time,* protect the rights of a person to file meritorious lawsuits for demonstrable injury."[71] Consequently, the TCPA is to be "construed liberally" toward effectuating and balancing *both* expressive liberties and rights of redress.[72]

Nor does the Court's construction ultimately advance the TCPA's goal of protecting free expression, the side of the Act's balancing equation that the Court is tacitly favoring here. What the Court's construction encourages is piecemeal or seriatim "motions to dismiss" attacking myriad "legal actions" that consist merely of individual filings within or related to a lawsuit, as opposed to the underlying lawsuit and substantive claims that are the Act's core focus. As such motions prolifer-

ate, application of the TCPA strays from—and, indeed, undermines through cost and delay—its manifest purpose to secure quick and inexpensive dismissal of meritless "legal actions" that threaten expressive freedoms.[73] The Court's construction would similarly invite tactical gamesmanship as parties could attack successive "legal actions" of this sort as a means of circumventing the Act's deadlines for filing motions to dismiss.[74]

But there *is* a construction of the TCPA that would advance the Act's purposes in the Rule 202 context, yet remain faithful to the statute's terms. It *is* the one already suggested by the preceding analysis—the "legal action" is not the Rule 202 petition or proceeding in itself, but the underlying potential claim or anticipated suit that is the predicate for the petition. In addition to avoiding the burdens, inefficiencies, and potential gamesmanship invited by the Court's construction, this view of the "legal action" more importantly squares with Section 27.005 and 27.006(a) and also with the unity Section 27.003(a) requires between the person whose free expression is threatened by the "legal action" and the "party" to the "legal action" who can bring the motion. I would hold that the Legisla-

---

upon the Open Records Act's exceptions' plain language" under the then-applicable version of the law-enforcement exception).

70. *See* Scalia & Garner, *supra* note 48, at 233, 244–46.

71. *Id.* § 27.002 (emphasis added).

72. *See Serafine,* 466 S.W.3d at 368 (Pemberton, J., concurring) ("Read in conjunction with section 27.002, this mandate [that the TCPA be 'construed liberally to effect its purpose and intent fully'] would refer to a dual duty on the part of courts to 'liberally construe' the statute both to 'encourage and safeguard the constitutional rights' protected by the statute and 'protect the rights of a person to file meritorious lawsuits for demonstrable

injury.' "); *Cheniere Energy, Inc. v. Lotfi,* 449 S.W.3d 210, 216 (Tex. App.–Houston [1st Dist.] 2014, no pet.) (emphasizing "the explicitly stated purpose of the statute, namely, to *balance* the protection of First Amendment rights against the right all individuals have to file lawsuits to redress their injuries.").

73. *See* Tex. Civ. Prac. & Rem. Code § 27.002 (purpose); *id.* §§ 27.003–.005 (prescribing mechanisms for threshold testing and expedited dismissal of "legal actions" that implicate expression the Act protects).

74. *Cf. In re Estate of Check,* 438 S.W.3d 829, 836–37 (Tex. App.–San Antonio 2014, no pet.) (rejecting attempt to effectively re-set Act's deadlines by filing successive amended petitions asserting same causes of action).

ture intended to address Rule 202 depositions under the TCPA in this manner, as opposed to deeming them stand-alone "legal actions" as the Court does.

Alternatively, even if a Rule 202 petition might fall within "legal action" in an abstract application of the TCPA's definition, I would hold for these reasons that the *relevant* "legal action" under Section 27.003(a) and (c) is the underlying potential claim or anticipated suit made the basis for the petition. As this Court's prior TCPA jurisprudence has recognized, application of the Act's "legal action" definition turns not only of whether there exists some correspondence between the definition and the particular pleading or filing at issue, but also the particular context in which external provisions of the Act are actually using or applying the term "legal action" and the Act's broader policies.[75] In

light of the foregoing analysis, these considerations point toward the relevant "legal action" here being the underlying potential claim or anticipated suit rather than the Rule 202 petition itself.

This construction of "legal action," to be sure, creates some potential tension with certain of the TCPA's other textual features. Most obviously, one might ask how a party could file a "motion to dismiss"[76] or a trial court "dismiss"[77] a "legal action" that currently exists in the form of a potential or anticipated or claim or suit, as opposed to one that has already been filed. Similarly, Section 27.003(b) sets the deadline for filing the motion to dismiss authorized in Section 27.003(a) at the 60th day "after the date of service of the legal action" targeted by the motion,[78] other TCPA provisions refer to the "the legal action" as having been "brought,"[79] and the Act's general

**75.** Given the myriad meanings or senses of "legal action" included in the TCPA definition, the term cannot mean all these things simultaneously in all of its uses within the TCPA. Consequently, determination of whether there is a "legal action" often requires not only finding some correlation to the general definition, but also ascertaining which of the multiple alternative senses of "legal action" the Legislature intended to govern within a particular TCPA provision or application—e.g, did it intend "legal action" in the sense of an entire "lawsuit," or that of a particular "cause of action," or in the sense of a pleading instrument or filing? This Court has acknowledged as much in its prior cases distinguishing between different claims and factual theories when applying the TCPA's mechanisms for dismissing a "legal action" that is "based on, relates to, or is in response to" protected expression, an analysis hinging logically on a view of "legal action" in the sense of a "cause of action" or individual "claim," that would have failed to the extent "legal action" referred to an entire "lawsuit" or pleading instrument. *See Serafine*, 466 S.W.3d at 360; *see also id.* at 393–94 (Pemberton, J., concurring) (elaborating on the import of the Court's "mixed-claim" holdings). Sister courts have also employed a similar analysis in holding that the TCPA's deadline for filing

a motion to dismiss, which is tied to the date a "legal action" is served, *see* Tex. Civ. Prac. & Rem. Code § 27.003(b), is not continually reset by the filing of successive amended petitions, notwithstanding that such "petitions" are explicitly included in the "legal action" definition. *See, e.g., Estate of Check*, 438 S.W.3d at 836–37. Such choices among alternative potential meanings of "legal action" are informed by the context of its particular usage and the TCPA's policy goals as reflected in the statute as a whole. *See Serafine*, 466 S.W.3d at 393–94 (Pemberton, J., concurring); *Estate of Check*, 438 S.W.3d at 836–37 (taking account of TCPA's manifest purpose of facilitating early dismissal of meritless "legal actions").

**76.** *See* Tex. Civ. Prac. & Rem. Code § 27.003(a).

**77.** *See id.* § 27.005.

**78.** *Id.* § 27.003(b).

**79.** *See id.* § 27.007(a) (requiring findings "regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose"), .009(a)(2) (sanc-

"legal action" definition also seems to contemplate that "legal actions" are "judicial pleadings or filings."[80] One would not ordinarily "serve" or have "brought" a "legal action" that remains merely potential or anticipated, nor would it normally be considered an existing "pleading or filing."

These potential discrepancies are resolved by remembering that a Rule 202 deposition is not an end in itself, but is in aid of an underlying potential or anticipated "legal action."[81] In this respect, the filing and service of the Rule 202 petition can be said to bring, assert, file, or serve the underlying "legal action" itself, at least to the extent of obtaining discovery in support of that "legal action." The net effect is that a Rule 202 petitioner is subject to a motion to dismiss challenging the underlying predicate "legal action" and not merely the discovery currently being sought, with the discovery stayed in the meantime including not only the Rule 202 deposition being sought, but also any other discovery that might be sought "in the legal action" if the claimant proceeds to file suit. While this ramification might initially seem anomalous, it is actually consistent with an intent by the Legislature to prevent Rule 202 depositions from being used to circumvent the TCPA's protections and limitations on speech-based claims. Were it otherwise, resourceful lawyers and litigants desiring to assert a substantive claim that "is based on, relates to, or is in response to" TCPA-protected expression—i.e., one vulnerable to the TCPA's expedited dismissal mechanisms, with discovery strictly restricted in the meantime—could obtain depositions in circumvention of those protections merely by refraining from filing the claim for the time being and invoking Rule 202. The TCPA, in my view, reflects that the Legislature sought to prevent such end-runs by effectively placing Rule 202 petitioner in the same position relative to the TCPA as if they had already filed the underlying speech-based claim or suit. But the Legislature did not make Rule 202 petitions in themselves "legal actions" subject to dismissal motions, as the Court reasons.

## REGARDLESS, THE TCPA SHOULD INFORM THE JUDICIARY'S APPLICATION OF RULE 202

On the other hand, it is conceivable that the TCPA, correctly construed, does not address Rule 202 depositions at all. In that event, the Act's policies should nevertheless inform judicial application of Rule 202 in cases where the underlying potential claims or anticipated suit would implicate TCPA-protected expression. For that matter, perhaps these judicially created and

---

tions "against the party who brought the legal action").

80. *See supra* at 476 (discussing *Sullivan,* 488 S.W.3d at 297–99); *but cf. Jorden,* 249 S.W.3d at 421–22 (observing that "cause of action" "generally applies to facts, not filings," and holding that "cause of action" as used in Medical Liability Act's definition of "health care liability claim" used term "in the general sense relating to underlying facts rather than a more limited sense applicable only to filed suits.").

81. *See* Tex. R. Civ. P. 202.2 (specifying that "petition" must state either "that the petition-er anticipates the institution of a suit in which the petitioner may be a party" or "that the petitioner seeks to investigate a potential claim by or against petitioner"); *see also id.* R. 202.4 (trial court may order requested deposition on findings either that "the requested deposition may prevent a failure or delay of justice in an anticipated suit" or "the likely benefit of ... the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure"), 202.5 ("The scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed.").

administered internal limitations on Rule 202 should be the Judiciary's starting point when considering how the rule and the TCPA interact.

While not qualifying the remedy as "equitable relief" in the sense of the TCPA "legal action" definition, Rule 202 explains that pre-suit depositions to investigate potential claims are "equitable in nature," and a corollary, the rule adds, is that "a court must not permit it to be used inequitably."[82] Accordingly, the Texas Supreme Court has instructed, "Courts must strictly limit and carefully supervise pre-suit discovery [under Rule 202] to prevent abuse of that rule."[83] In particular, the supreme court has emphasized, Rule 202 should not be used as an "end-run around discovery limitations that would govern the anticipated suit" or to obtain by that means what would be denied in that suit.[84] Allowing Rule 202 to be used to obtain

pre-suit depositions concerning potential claims that can potentially be shown to be "based on, relate[ ] to, or [be] in response to". TCPA-protected expression would achieve this sort of prohibited end-run to the extent trial courts do not take account of the TCPA's protections and limitations in determining whether and to what extent to allow that discovery.

More generally, precedents from both the Texas Supreme Court and this Court have recognized that judicial application of equity-rooted remedies should be informed by—and, sometimes, altered significantly in deference to—the legislative policy judgments reflected in intervening statutory enactments, even where the statutes themselves would not directly reach the subject matter of the dispute before the court. This is the approach the high court has applied with regard to equitable prejudgment interest,[85] and this Court fol-

82. Tex. R. Civ. P. 202 cmt. 2 ("The bill of discovery procedure, which Rule 202 incorporates, is equitable in nature, and a court must not permit it to be used inequitably.").

83. *Wolfe*, 341 S.W.3d at 933.

84. *Id.*; accord *In re Depinho*, 505 S.W.3d 621, 625, 2016 WL 2979797, *4, No. 15–0294, 2016 Tex. LEXIS 385, *1, *4–11 (Tex. May 20, 2016) (per curiam) (holding that "trial court clearly abused its discretion by ordering Rule 202 depositions" to "investigate unripe claims" given that a lawsuit asserting such claims, if filed, would have been dismissed "on ripeness grounds" (citing *Wolfe*, 341 S.W.3d at 933)); *Combs v. Texas Civil Rights Project*, 410 S.W.3d 529, 535 (Tex. App.–Austin 2013, pet. denied) ("[W]hile pre-suit depositions under [R]ule 202 are not necessarily barred by sovereign immunity, governmental entities are protected from pre-suit depositions to the same extent they would be protected from the same depositions in the contemplated suit underlying the proceedings.") (citations omitted).

85. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529–31

(Tex. 1998). Equitable prejudgment interest is the default source for such awards absents statutory or contractual authorization. *See id.* at 528. Following the supreme court's 1985 decision in *Cavnar v. Quality Control Parking*, which had the effect of expanding the availability and amount of equity-based prejudgment-interest awards compared to prior precedents, 696 S.W.2d 549, 554–55 (Tex. 1985), the Legislature had enacted a 1987 statute to govern and limit more strictly prejudgment-interest awards in cases involving "wrongful death, personal injury, and property damage," but leaving awards in most other cases to be governed by the now-more-generous background equitable principles. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 529. Subsequently, in *Kenneco*, the supreme court had occasion to revisit *Cavnar* in light of the intervening statutory change. *See id.* at 529. While holding that the statute did not apply to the case at hand as a matter of proper construction, *see id.* at 529–30, the supreme court held nonetheless that the governing equitable principles for awarding prejudgment interest must take account of the Legislature's intervening balancing of policy interests reflected in its choice of interest-calculation methods for cases within the statute. *See id.* at 530–31.

lowed that lead in *Shook v. Walden*,[86] in which we addressed the standards or elements that a claimant would have to prove to "pierce" the "veil" of a limited-liability corporation assuming (as had the parties there) that this remedy would be available in some form against an LLC under the equitable principles that had long been held to operate against business corporations.[87] We should give similar deference to the Legislature's intervening balancing of interests in the TCPA and hold that it is "inequitable," and therefore beyond judicial discretion, to permit Rule 202 to be used to obtain discovery to an extent the Act would not allow.

The foregoing considerations would suggest that Rule 202's application should be constrained, as a matter of the rule's own internal limiting principles, along the following lines:

● Consistent with TCPA Sections 27.003(a) and (c), a trial court would lack discre-

tion to grant a Rule 202 petition in the face of an objection asserting that the petition is predicated on a potential claim or anticipated suit that would be "based on, related to, or in response to" the "exercise of" the "right of free speech," "right of association," or "right to petition" as the Act defines those concepts.[88]

● It the objector can make a showing that the potential claim or anticipated suit is in fact one "based on, related to, or in response to" the "exercise of" the "right of free speech," "right of association," or "right to petition," the Rule 202 petition would be denied unless the petition can present the "prima facie" case consistent with TCPA Section 27.005(c) for each essential element of at least one underlying claim. In that event, the burden would likewise shift back to the objector consistent with Section 27.005(d).

Accordingly, the court conformed the equitable principles to track the statutory method, *see id.* also noting that it had done the same when fashioning a prejudgment interest accrual rule in latent-injury cases, *see id.* at 531 (citing *Owens–Illinois v. Estate of Burt*, 897 S.W.2d 765, 769 (Tex. 1995)), and had similarly looked to legislative policies reflected in statutes when fashioning tort doctrines. *See id.* (citing *Smith v. Merritt*, 940 S.W.2d 602, 604–05 (Tex. 1997) (common-law social-host liability duties informed by Dram Shop Act)).

**86.** 368 S.W.3d 604 (Tex. App.–Austin 2012, pet. denied).

**87.** The Legislature had not yet spoken to LLC veil-piercing through statute. *See id.* at 607. The dispute in *Shook* centered on the extent to which analysis would be governed solely by the equitable business-corporation veil-piercing principles as the Texas Supreme Court had applied them in its 1986 *Castleberry* decision (a decision "perceived as a significant expansion of shareholder and director liability," as we noted, *id.* at 611–13 (discussing *Castleberry v. Branscum*, 721 S.W.2d 270, 271–75 (Tex. 1986))), or must take account of

intervening statutory changes that stiffened the requirements for obtaining that remedy against a business corporation. *See id.* at 612–13 (summarizing statutory amendments). Although we held that these statutory limitations did not shield LLCs as a matter of statutory construction, *see id.* at 619, we rejected the notion that application of the equitable principles to LLCs would simply default back to tracking *Castleberry*. *See id.* Instead, following *Kenneco*'s lead, we deduced that the judicial balancing of interests inherent in determining whether the limited-liability form had been "abused" must properly take account of the Legislature's balancing of those same interests as reflected in its intervening statutory changes. *See id.* at 619–21. Accordingly, we held that the equities would require claimants seeking to "pierce" the "veil" of an LLC to meet the same requirements as if the entity were a business corporation instead. *See id.* at 621.

**88.** And if lack of specificity in the petition defies this determination, the trial court should deny the petition for failure to include the contents required by Rule 202. *See* Tex. R. Civ. P. 202.2.

● Further deferring to the Legislature's judgment reflected in Section 27.006(a), the trial court would have discretion to permit "specified and limited discovery" relevant to the objection upon a showing of "good cause."

These limitations on Rule 202 depositions or discovery deriving from the TCPA would not be exclusive, of course, and other grounds for objections or protection might well come into play.[89] Like the First Amendment right to anonymous speech ... which brings us back to the issue that should have been our focus all along.

### CONCLUSION

I agree that mandamus should conditionally issue to restrain the district court's order, but I disagree with the Court's analysis of the TCPA or that we should even address that statute here.

---

89. *See* Tex. R. Civ. P. 202.5 ("The scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed."); *cf.* Tex. Civ. Prac. & Rem. Code § 27.011(a) ("This chapter [the TCPA] does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.").